# United States Court of Appeals for the Fifth Circuit

———————

No. 23-50636

———————

United States Court of Appeals
Fifth Circuit

**FILED**

September 16, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ETHAN STURGIS DAY,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:19-CR-1019-2

———————————————————————

Before HAYNES, WILLETT, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

A jury convicted Ethan Sturgis Day of wire fraud, conspiracy to commit wire fraud, money laundering, and aiding and abetting in violation of 18 U.S.C. §§ 2, 1343, 1349, and 1957(a). The district court sentenced him to 101 months of incarceration and three years of supervised release. Day now challenges that sentence as procedurally erroneous. We vacate his sentence and remand for resentencing.

No. 23-50636

## I

Day was part of a scam that purported to sell shipping containers converted into housing units. In order to lure customers, the scammers misrepresented employees' credentials, their affiliations with legitimate businesses, and their past and future construction projects. As part of the scheme, Day oversaw a number of employees who helped generate new business. Day also managed the scammers' bank accounts. The scammers, including Day, took customers' money and never delivered the container homes.

Prior to sentencing, the Presentence Investigation Report ("PSR") identified 41 victims and assessed a loss amount of $2,563,123.72. The PSR did not, however, analyze the individual financial circumstances of the 41 victims. It addressed only the facts and circumstances of eight victims.

In calculating Day's Sentencing Guidelines range, the PSR first enhanced his offense level by 16 points under U.S.S.G. § 2B1.1(b)(1)(I) based on the loss level of $2,563,123.72. It then recommended U.S.S.G § 2B1.1(b)(2)(C)'s additional six-level enhancement for causing substantial financial hardship to 25 or more victims. The PSR recommended this enhancement because "at least 25 victims' degree of financial harm suffered was extensive." And finally, the PSR recommended an additional two-point enhancement for Day's role as an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c). Day objected on all three fronts: he contested the total loss amount and the additional enhancements for substantial financial hardship and leadership.

The district court overruled Day's objections and adopted the PSR. It noted that there were "at least 25 people that were affected by the conduct," ROA.10763, and "at least one or two individuals" who lost their life savings, ROA.10765. But when pressed by Day's counsel to conduct a more

2

individualized assessment of the relative financial displacement of the victims, the court dismissed Day's concerns.

As to the leadership enhancement, the district court found that Day had supervisory authority over employees within the conspiracy. After overruling the objections, the court held that the Total Offense Level was 31 and the Criminal History Category was I, and it gave Day a within-Guidelines sentence of 108 months.

A few weeks later, the district court held a restitution hearing. After considering testimony from a forensic accountant, the court lowered the loss amount by nearly $1 million. The court based its recalculation on the fact that some customers, particularly corporate clients who placed large orders, had in fact received hundreds of thousands of dollars' worth of shipping containers. Given this significant change, the Government and the court agreed to re-sentence Day.

Day again lodged his three objections to his enhancements, which the district court again overruled. With the lower loss amount, the court adjusted Day's offense level to 29. With the new offense level, the court gave Day a 101-month prison sentence. Day timely appealed.

## II

We review the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *United States v. Garcia*, 99 F.4th 253, 265 (5th Cir. 2024). At the district court, Day objected to enhancements for both (A) substantial financial hardship and (B) leadership. We discuss them in turn.

No. 23-50636

A

We (1) explain the substantial-hardship enhancement and then (2) explain why it does not apply to Day. Finally, we (3) address the Government's counterarguments.

1

When an individual is sentenced for "Theft, Embezzlement, Receipt Of Stolen Property, Property Destruction And Offenses Involving Fraud Or Deceit," the district court must first apply U.S.S.G. § 2B1.1. Under that subpart of the Guidelines, an offender begins with a Base Offense Level of 7. U.S.S.G. § 2B1.1(a)(1). The court then must add points to the offense level based on the loss amount. *See id.* § 2B1.1(b)(1) (table with loss amounts and corresponding enhancement points).

Then the district court must consider the various specific offense characteristics that appear in § 2B1.1(b)(2). The relevant one here imposes a six-point enhancement if the fraud "resulted in substantial financial hardship to 25 or more victims." *Id.* § 2B1.1(b)(2)(C).

Substantial financial hardship is a relatively recent addition to the Sentencing Guidelines. Added in 2015, it "advises sentencing courts to consider the extent of the harm rather than merely the total number of victims of the offense (as its predecessor did) in an effort to 'place greater emphasis on the extent of harm that particular victims suffer as a result of the offense.'" *United States v. Poulson*, 871 F.3d 261, 267 (3d Cir. 2017) (quoting Sentencing Guidelines for the United States Courts, 80 Fed. Reg. 25,782, 25,791 (May 5, 2015)). To explain the change, the Sentencing Commission included a new application note:

> In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—

(i)    becoming insolvent;

(ii)   filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);

(iii)  suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv)   making substantial changes to his or her employment, such as postponing his or her retirement plans;

(v)    making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and

(vi)   suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1(b)(2) cmt. 4(F).

In applying U.S.S.G. § 2B1.1(b)(2), we have held that substantial financial hardship is "a loss" that "significantly impacts the victim's resources." *United States v. Aderinoye*, 33 F.4th 751, 757 (5th Cir. 2022) (citation omitted). In *Aderinoye*, the impact on the victim's resources was a six-month setback to a small business, which made it "difficult to make payroll" and caused the business not to pay some of its vendors. *Ibid.* In upholding the enhancement, we reasoned that the "inability to pay vendors constitutes temporary insolvency" under comment 4(F)(i). *Ibid.*

The *Aderinoye* court also recognized that comment 4(F)'s list of factors is not exhaustive. What matters to the inquiry is that such occurrences as "bankruptcy, loss of a large portion of a retirement or other investment account, needing to change employment or living arrangements, and difficulty obtaining credit all *indicate* substantial financial hardship." *Ibid.* (emphasis added). This means substantial financial hardship may be demonstrated another way, as long as the Government shows that the loss "significantly impacts the victim's resources." *Ibid.*; *accord United States v. George*, 949 F.3d 1181, 1185 (9th Cir. 2020) ("By including 'substantial' before

'financial hardship,' the provision excludes minor or inconsequential financial harms. That conclusion is supported by the noun 'hardship,' which itself suggests something more than a mere inconvenience."); *United States v. Minhas*, 850 F.3d 873, 878 (7th Cir. 2017) ("[T]he word 'substantial' implies that the loss or hardship must be significant, meaning at least more than minimal or trivial."); *see also id.* at 877–78 ("[W]hether a loss has resulted in a substantial hardship . . . in most cases, [is] gauged relative to each victim. The same dollar harm to one victim may result in a substantial financial hardship, while for another it may be only a minor hiccup. Much of this will turn on a victim's financial circumstances . . . . A loss that may not be substantial to Bill Gates may be substantial to a working person." (quotation omitted)).

In counting the number of victims, a district court "may make reasonable inferences about the victims' financial circumstances and about their level of financial harm, so long as those inferences find some support in the record." *Aderinoye*, 33 F.4th at 757 (quoting *United States v. Howder*, 748 F. App'x 637, 644 (6th Cir. 2018)). A court need not "identify which of the particular victims it is including in its calculation," but the Government must produce enough evidence for the "sentencing court to reasonably to infer a pattern" affecting 25 or more people. *George*, 949 F.3d at 1186 (quotation omitted).

2

The record in this case does not support the six-point enhancement for substantial financial hardship to 25 or more victims. The district court did not assess whether the loss "significantly impact[ed] the victim's resources." *Aderinoye,* 33 F.4th at 757. Instead, the court applied the enhancement by noting that the loss amount was high and that there were more than 25 victims. In overruling Day's objection, it stated:

No. 23-50636

> [I]n essence, say that someone spends 40 grand on one of these, gets nothing, but because it's just savings they had available, they wouldn't qualify as having financial hardship. That just flies [i]n the face of common sense. And I'm not buying it.

ROA.10770.

This appears to rest the enhancement on total loss alone. True, $40,000 is a significant financial loss to many people. It is also true that when many victims each incur a $40,000 loss, the total loss is sizeable. But the loss table in § 2B1.1(b)(1) already accounts for these concerns. The substantial-hardship enhancement in § 2B1.1(b)(2) captures something different: Rather than punishing the total loss, § 2B1.1(b)(2) punishes the hardships imposed on victims. That is why "[i]t would be clear error for a district judge, for example, merely to divide a total loss amount by the number of victims without any information about the amount each individual victim suffered or the victim's financial circumstances." *Minhas*, 850 F.3d at 878.

Nor did the district court infer from the evidence a pattern to the fraud that would allow it to count 25 or more victims who suffered substantial financial hardship. The loss amounts in this case range from $3,800 to $182,000—and only 16 victims lost $40,000 or more. So even if a $40,000 loss imposes a substantial financial harm, the record in this case does not satisfy § 2B1.1(b)(2)(C)'s numerosity requirement.

3

The Government nevertheless maintains that the experience of six victims is enough to infer a pattern of substantial financial hardship. To make this case, it reaches back to trial evidence and relies on several victims not discussed by the district court at sentencing or mentioned in the PSR.

True, a district court could find by a preponderance of the evidence a pattern of substantial financial hardship and then rely on that pattern to infer

25 or more victims under § 2B1.1(b)(2). For example, the *modus operandi* of a fraud might be to deprive victims out of their "retirement, education, or other savings or investment fund[s]." U.S.S.G. § 2B1.1(b)(2) cmt. 4(F)(iii). Or the *modus operandi* of a fraud could lead to a substantial change in victims' living arrangements. *Id.* § 2B1.1(b)(2) cmt. 4(F)(v).

But that is not what happened here. Some of Day's victims were corporate customers. Those victims placed orders for dozens of containers, and they received the bulk of those orders. That is why the district court lowered Day's loss amount by nearly $1 million. And that evidence undermines the Government's contention that the court could rest its § 2B1.1(b)(2)(C) enhancement on the inference that only poor people bought Day's container houses.

On remand, the evidence may yet support some pattern of substantial financial hardship that qualifies for one of § 2B1.1(b)(2)'s enhancements. But the record before us now does not support the subsection (c) enhancement for 25 or more victims of substantial hardship.

B

The district court was correct when it applied the U.S.S.G. § 3B1.1(c) enhancement for an organizer, leader, manager, or supervisor. Section 3B1.1(c) provides for a two-level enhancement where "the defendant either (1) exercised control over another participant in the offense, or (2) exercised management responsibility over the property, assets, or activities of a criminal organization." *United States v. Delgado*, 672 F.3d 320, 345 (5th Cir. 2012) (en banc) (quotation omitted).

Day did both.

*First*, he exercised control over participants. Those under his supervision included a sales representative who would lure victims into the fraud, a

designer for the container homes, a worker who would lay foundations for the homes, and an individual in a marketing position. It was through the sales representative that several victims would have their initial contact with the scheme and ultimately pay Day for services never rendered.

*Second*, Day managed a significant portion of the fraud's assets. He initiated the creation of its primary bank account, into which he deposited much of the fraud's proceeds. These transfers formed the basis of the money laundering convictions.

Day resists this conclusion by claiming that another member of the scheme was more culpable and was really the "brains" behind the operation. But § 3B1.1(c) does not require the defendant to be the mastermind or king-pin of a criminal conspiracy. Lower-tier managers and supervisors can still qualify for the enhancement, and there can be "more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." *United States v. Cooper*, 274 F.3d 230, 247 (5th Cir. 2001).

\* \* \*

Day's sentence is VACATED, and the case is REMANDED for resentencing.